UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA SUE BOWEN, | ) |
|       Plaintiff, | ) No. CV-11-0414-FVS |
|       v. | ) ORDER GRANTING DEFENDANT'S ) MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Commissioner of Social Security,[1] | ) |
|       Defendant. | ) |

**BEFORE THE COURT** are cross-motions for summary judgment. (ECF Nos. 11, 13). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Kathy Reif represents the Commissioner of Social Security (defendant). On March 18, 2013, plaintiff filed a reply. (ECF No. 15). After reviewing the administrative record and the briefs filed by the parties, the court **grants** defendant's Motion for Summary Judgment

**JURISDICTION**

Plaintiff applied for a period of disability and disability insurance benefits (DIB) on August 27, 2009, alleging disability as of September 1, 2005 (Tr. 17). The applications were denied initially and on reconsideration.

---

[1] As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Administrative Law Judge (ALJ) James W. Sherry held a hearing on September 15, 2010 (Tr. 30-60), and issued an unfavorable decision on October 28, 2010 (Tr. 17-24).  The Appeals Council denied review on September 6, 2011 (Tr. 1-6).  The ALJ's October 2010 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 31, 2011.  (ECF No. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on January 31, 1949, and was 56 years old on the alleged onset date (Tr. 33).  She obtained her high school diploma and attended some college (Tr. 34).  Plaintiff worked for real estate companies doing secretarial work from 1995 to 1998, worked briefly as a medical transcriptionist in 2000, and worked for Dictation Service Center doing medical dictation from 2000 to 2002 (Tr. 36-38).  At the hearing, plaintiff testified she stopped working in 2002 because she was no longer capable of doing her job accurately (Tr. 38).  She stated she had difficulty with typing, putting things in proper order and spelling, and, as a result, was terminated from her job (Tr. 38).  Upon questioning by the ALJ, plaintiff stated that after she stopped working in 2002, she cared for her husband who was "very ill" at the time (Tr. 45).

Plaintiff indicated that, in 2005, her memory was not good, she was not able to handle a checkbook or pay her bills, she had difficulty making change, and her husband took over the cooking

responsibilities (Tr. 39-40). She stated she has a driver's license but no longer drives (Tr. 40). She testified she relies on her husband for transportation (Tr. 42-43). Plaintiff indicated she sleeps quite well with medication, but her sleep would be "fitful" without her medication (Tr. 43).

Plaintiff's husband, Don Bowen, also testified at the administration hearing on September 15, 2010 (Tr. 45-55). Mr. Bowen indicated he was having breathing problems in 2002 that resulted in his retirement from his employment in sheet metal construction, but that the issue did not require his wife to care for him (Tr. 47). Mr. Bowen testified that, in 2002, plaintiff's typing skills diminished and she could no longer do the checkbook (Tr. 47-48). He stated that plaintiff could still make change in 2002, but by 2004 she was no longer capable of going to a store and paying for groceries on her own (Tr. 48). Mr. Bowen indicated plaintiff stopped driving and cooking in 2005, had difficulty remembering appointments in 2005, and could no longer sew by 2006 (Tr. 49-50).

Mr. Bowen testified that, in 2005, plaintiff was able to clean the house and assist with work on their land (Tr. 51). He stated, however, that plaintiff was no longer able to perform the house cleaning by 2007, because she was not able to stay on task (Tr. 52). Mr. Bowen stated that her difficulty with housework in 2007 resulted in the first visit with Dr. Clark (Tr. 52). Mr. Bowen opined that plaintiff would not have been able to work in 2005 because she was not capable of keeping on track (Tr. 54). He further indicated that her condition has gradually gotten worse over time (Tr. 54-55).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, plaintiff's residual functional capacity (RFC) is considered.  If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

     The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If

evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found plaintiff was insured through March 31, 2007. Therefore, plaintiff must establish disability prior to March 31, 2007 (Tr. 17, 33). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of September 1, 2005, through her date last insured (Tr. 19). The ALJ determined plaintiff had the following medically determinable impairments during the relevant time period: major depressive disorder with anxious features, and history of panic attacks (Tr. 19). However, at step two, he found plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. (Tr. 19). Accordingly, the ALJ determined that plaintiff did not have a severe impairment during the relevant time period in this case

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

(Tr. 19). Consequently, the ALJ concluded that plaintiff was not disabled as defined by the Social Security Act from September 1, 2005, the alleged onset date, through March 31, 2007, plaintiff's date last insured (Tr. 24).

**ISSUE**

Plaintiff argues that the ALJ's step two determination that she had no severe impairments was erroneous (ECF No. 12 at 7-11).

**DISCUSSION**

Plaintiff alleges the ALJ should have found, at step two, that she suffered from severe mental impairments during the relevant time period, from September 1, 2005, to March 31, 2007 (ECF No. 12 at 7-11).

Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, plaintiff must furnish medical and other evidence that shows she has a severe impairment. 20 C.F.R. § 416.912(a). The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities. An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. In the absence of objective evidence to verify the existence of an impairment, the ALJ must reject the alleged impairment at step two of the sequential evaluation process. SSR 96-4p.

Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th

Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see, Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that plaintiff did not have a medically severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

    Here, the ALJ concluded that, during the relatively narrow relevant time period, the medical record contains insufficient evidence to support a finding of a severe impairment (Tr. 21). The undersigned agrees.

    There is simply no objective evidence to substantiate plaintiff's claim of dementia during the relevant time period. As noted by the ALJ, treatment notes from 2005-2006 reflect few complaints of, or treatment for, mental symptoms (Tr. 21). Rather, plaintiff was primarily treated for reported physical symptoms during that period of time (Tr. 21, 223-278).

    On January 5, 2005, plaintiff was evaluated by Lior Givon, M.D., Ph.D., for treatment of depressive symptoms (Tr. 275-278). Plaintiff reported at that time that when she began taking "a male hormone" in 1989, she became forgetful of details at work and started "gradually going downhill" (Tr. 275). She related,

however, that Zoloft, an antidepressant medication, helped regain some of her functioning (Tr. 275). The mental status exam revealed the following: plaintiff was very friendly and pleasant; she demonstrated good hygiene; she maintained good eye contact; her thought processes were linear and goal directed with no evidence of disorganization; there was no evidence of hallucinations or delusions; her judgement and insight were fair; and her intelligence was estimated as average (Tr. 277). Dr. Givon diagnosed plaintiff with major depressive disorder, moderate to severe, in partial remission, with anxious features, and history of panic attacks, and gave her a global assessment of functioning (GAF) score of 70-75[2] (Tr. 277).

A February 24, 2005, clinic note from Deborah A. Montowski, M.D., indicates plaintiff was seen following an adverse reaction to Wellbutrin, a different antidepressant medication (Tr. 268). It was noted that plaintiff's mother had passed away "in the middle of all this" and that she had "some severe depression and anxiety with a serotonin syndrome," but was doing "fairly well" at that time (Tr. 268).

There are no other medical reports of record which document mental health related issues from a time prior to plaintiff's date last insured.

Given the foregoing limited medical evidence, which fails to establish the existence of dementia prior to March 31, 2007, or

---

[2] A GAF of 80-71 indicates: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

that plaintiff's depression and panic attack significantly limited her ability to do basic work activities prior to March 31, 2007, the undersigned finds that the ALJ did not err by finding that plaintiff suffered from no severe impairments during the relevant time period in this case.

While plaintiff argues that a May 18, 2007 clinic note from April S. Hume, M.D., (Tr. 202), July 31, 2007 and February 14, 2008 evaluations completed by J. Robert Clark, M.D., (Tr. 190-196), an evaluation completed by Jennifer Van Wey, Psy.D., in July 2009 (Tr. 210-222), and December 2009 and June 2010 records from Sylvia Rojas, M.D. (Tr. 299-304) demonstrate she suffered from severe mental impairments, those records post-date plaintiff's date last insured. Because these reports do not evidence plaintiff's functional limitations between the alleged onset date and the date last insured, they are immaterial in this case.

In any event, as discussed by defendant, the evidence from after the expiration of plaintiff's insured status does not undermine the ALJ's determination.

While Dr. Hume noted plaintiff's complaints of memory loss "for the past three to four months", Dr. Hume failed to conduct objective testing, such as a mini mental status exam, to confirm memory loss and did not diagnose dementia (Tr. 202). Dr. Hume's report merely documents plaintiff's reported recent memory difficulties.

With respect to Dr. Clark's July 31, 2007 neurological evaluation, plaintiff earned 27/30 on a mini mental status exam (Tr. 191-192). Dr. Clark opined that plaintiff "probably does not have dementia", but may be at risk for developing dementia (Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

193). He recommended an MRI scan of the brain. On a follow up exam in February 2008, Dr. Clark noted plaintiff had an extensive evaluation, with thyroid function studies, B12 studies and MRI imagining in the brain. The results of all tests were within normal limits (Tr. 195). He indicated plaintiff had been restarted on Zoloft and was now functioning much better (Tr. 195).

Plaintiff's performance during Dr. Van Wey's July 2009 evaluation revealed some errors, such as stating there were 30 seconds in a minute, not naming the current president and performance at the kindergarten range in arithmetic, were likely committed due to poor effort and inattention (Tr. 217-218). Dr. Van Wey indicated that while variable effort and attempts to appear more impaired were evidenced during the evaluation, plaintiff still demonstrated legitimate cognitive impairment (Tr. 218). Dr. Van Wey diagnosed plaintiff with dysthymic disorder and probable dementia of the Alzheimer's type, and gave her a GAF score of 70[3] (Tr. 218). Dr. Van Wey's report noted plaintiff's daily activities as providing for personal care without difficulty, working in her garden and talking to neighbors throughout the day, caring for dogs she and her husband fostered for a local pet rescue, using a computer for email and internet, watching television and sewing (Tr. 214).

By December 2009, more than two years following the expiration of plaintiff's insured status, Dr. Rojas definitively

---

[3] A GAF of 70-61 is characterized as: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

diagnosed early onset dementia, probable Alzheimer's type, likely related to her history of brain trauma as a baby (Tr. 300). However, as indicated above, the record reflects no opinion from a treating or examining source indicating that plaintiff had more than minimal functional limitations between the alleged onset date and the date last insured.

The undersigned finds that the ALJ reasonably concluded plaintiff's dementia was not medically determinable during the relevant time period and plaintiff's depression and history of panic attacks were non-severe impairments during the relevant time period. Accordingly, the ALJ did not err at step two of the sequential evaluation process in this case.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (**ECF No. 13**) is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment (**ECF No. 11**) is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

**DATED** this  29th  day of May, 2013.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13